**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS**

| | |
|---|---|
| **DARLENA KAY MORRISON,** | |
| Plaintiff, | |
| **v.** | **CIVIL ACTION NO.: 2:18-CV-116 (BAILEY)** |
| **NANCY A. BERRYHILL,**<br>**Acting Commissioner of Social Security,** | |
| Defendant. | |

## <u>REPORT AND RECOMMENDATION</u>

### I.   <u>INTRODUCTION</u>

This case arises from the denial of Plaintiff Darlena Kay Morrison's ("Plaintiff") Title XVI application for supplemental security income ("SSI"). After Plaintiff's application proceeded through the administrative process, a United States Administrative Law Judge ("ALJ"), William R. Paxton, concluded that Plaintiff was not disabled within the meaning of the Social Security Act. Plaintiff's request for review by the Appeals Counsel was denied, making the ALJ's decision the final decision of Defendant Nancy A. Berryhill ("Commissioner"), the acting Commissioner of Social Security. Now, Plaintiff seeks judicial review of the Commissioner's decision. Because the Commissioner's final decision to deny Plaintiff's claim for SSI is not supported by substantial evidence, the undersigned reports and recommends that Plaintiff's Motion for Summary Judgment [ECF No. 16] be **GRANTED** and Defendant's Motion for Summary Judgment [ECF No. 19] be **DENIED**.

## II.   <u>PROCEDURAL HISTORY</u>

On or about March 18, 2015, Plaintiff protectively filed her claim for SSI, with an alleged onset date of disability of January 1, 2004. R. 61. Plaintiff's application for SSI was initially denied on June 9, 2015, and upon reconsideration on September 3, 2015. R. 95, 104. After these denials, Plaintiff requested a hearing before an ALJ. R. 111. On July 5, 2016, Plaintiff amended her alleged onset date to January 1, 2015. R. 191. On August 7, 2017, a hearing was held before the ALJ. R. 36. The ALJ presided over the hearing in Charleston, West Virginia. <u>Id.</u> Plaintiff, represented by Yvonne Costelloe, Esq., appeared and testified in person. <u>Id.</u> William Tanzey, a vocational expert ("VE"), also appeared and testified at the hearing. <u>Id.</u> On October 13, 2017, the ALJ issued a decision concluding that Plaintiff was not disabled within the meaning of the Social Security Act at any time since March 18, 2015, the protective filing date of her SSI claim. R. 21–22. On September 10, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. R. 1.

On November 7, 2018, Plaintiff, through counsel, Jan Dils, Esq., filed a Complaint in this Court to obtain judicial review of the Commissioner's final decision pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). Compl., ECF No. 1. The Commissioner, through counsel Helen Campbell Altmeyer, Assistant United States Attorney, filed her Answer and the Administrative Record of the proceedings on January 28, 2019. Answer, ECF No. 11; Admin. R., ECF No. 12. Soon thereafter, Plaintiff and the Commissioner filed their Motions for Summary Judgment and supporting briefs. Pl.'s Mot. Summ. J., ECF No. 16; Def.'s Mot. Summ. J., ECF No. 19. Neither party filed a

response. Oral argument on the parties' motions was held before the undersigned on May 15, 2019.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule of Civil Procedure 9.02(a). Having reviewed the parties' motions and the administrative record, and having heard the parties' oral argument, the undersigned now issues the following Report and Recommendation.

### III.   BACKGROUND

**A.   Personal History**

Plaintiff was born on December 31, 1980, and was thirty-four years old at the time she made her application for SSI, making her a "younger individual" under the SSA regulations. R. 41. She is 5'3" and weighs approximately 181 pounds. R. 61. Plaintiff lives with her three children and her boyfriend. R. 43. Plaintiff has completed school through the 9th grade. R. 41. Plaintiff asserts that she last worked as a cashier at a gas station intermittently for one-and-a-half to two years. Id. Plaintiff alleges that she has not worked since her amended alleged onset date of January 1, 2015. Id. Plaintiff alleges that she is permanently and totally disabled due to scoliosis, fibromyalgia, thyroid issues, herniated discs, chronic back pain, rheumatoid arthritis in her hands, migraines, depression, anxiety, and vertigo. R. 61–62, 77.

**B.   Medical History**

In accordance with the Court's Order Directing Filing of Briefs, the parties were required to produce a stipulation of facts in order to provide the Court with a chronology in narrative form of Plaintiff's relevant medical history. ECF No. 14, at 2. Accordingly, the

undersigned relies upon those stipulated facts throughout this report and recommendation. <u>See</u> Mem. Supp. Pl.'s Mot. J. on Pleadings, ECF No. 16-1, at 2–4; Def.'s Brief Supp. Mot. Summ. J., ECF No. 20, at 3–6.

## C.     Vocational Expert Testimony

At the ALJ hearing, the ALJ directed the VE to consider a hypothetical person who is a younger person as defined in the regulations, currently age 36; who has a 9th grade or limited education as defined in the regulations; who has no vocationally relevant past work experience; who is assumed to be limited to performing sedentary work as defined in the regulations; but who can never perform climbing of ladders, ropes, or scaffolds; who can occasionally perform balancing, kneeling, stooping, crouching, crawling, and climbing of ramps and stairs; who must avoid concentrated exposure to extreme cold, extreme heat, vibration, loud noise, and hazards such as unprotected heights and dangerous machinery; who is limited to understanding, remembering and carrying out simple instructions; to performing simple, routine, repetitive tasks; to performing work not involving a rapid pace or strict production quotas; to occasional interaction with supervisors, coworkers, and the public; and to work in a stable work environment where there would be only occasional changes to the routine work setting. R. 54–55. The VE testified that such a hypothetical person could perform three jobs: (1) security monitor, DOT #379.367-010 (297,000 jobs nationally), (2) router, DOT #235.662-018 (259,000 jobs nationally), and (3) grader/sorter, DOT #521.687-086 (182,000 jobs nationally). R. 55.

Following this testimony, Plaintiff's counsel initiated the following dialogue:

Q:      Mr. Tanzey, just going back to the first hypothetical, with regard to the interaction with others . . ., when looking at the

router clerk, doesn't that involve – would that not involve more contact than tolerated by the hypothetical?

A:      No. Router can be – it can work with a team or a router could just simply be a – a job where a person works alone and routes products to the next work station.

Q:      Okay. And when we're looking at that type of job and also at the grader job, the individual here, with regard to the limitations on productivity and pace – or production and pace, would that not affect their ability to maintain these type of position [sic] if there's – is there not a set pace by the employer?

A:      Well, as I recall – I'm looking at the way he stated the hypothetical, Counsel. He said work quotas. Every job will have certain expectations for pace. Any competitive job would have certain expectations for pace.

What I did was eliminate jobs that would have hard and fast objective work quotas, and these would not.

Now, if you were to adjust any pace job, then I couldn't offer jobs.

ALJ:    I had intended to, in that first question, and I hope that I did, indicate that such person would be – could not perform work requiring a rapid pace.

Would any of the – any of the jobs that you named require rapid or fast pace?

VE:     No, sir.

ALJ:    How would you describe the pace involved in the types of jobs you named?

VE:     It would be just a typical, simple, one, two steps that would require just staying at a steady pace. It isn't like there's products coming in front of you on a conveyor belt that would require fast pace.

R. 56–58. Plaintiff's counsel also asked of the VE:

> Q:      And if we had an individual that needed to have supportive
>         supervision – if I list it as periodic supportive supervision, would you
>         be able to list jobs for them?
>
> A:      Not competitive jobs. That is sheltered work. There would be no
>         competitive employment that that hypothetical person could perform.

R. 58.

## IV.   THE FIVE-STEP EVALUATION PROCESS

To be disabled under the Social Security Act, a claimant must meet the following

criteria:

> [The] individual . . . [must have a] physical or mental
> impairment or impairments . . . of such severity that he is not
> only unable to do his previous work but cannot, considering
> his age, education, and work experience, engage in any other
> kind of substantial gainful work which exists in the national
> economy, regardless of whether such work exists in the
> immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he
> applied for work. . . . '[W]ork which exists in the national
> economy' means work which exists in significant numbers
> either in the region where such individual lives or in several
> regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Social Security Administration uses the

following five-step sequential evaluation process to determine whether a claimant is

disabled:

> (i) At the first step, we consider your work activity, if any. If you
> are doing substantial gainful activity, we will find that you are
> not disabled.
>
> (ii) At the second step, we consider the medical severity of
> your impairment(s). If you do not have a severe medically
> determinable physical or mental impairment that meets the
> duration requirement [of twelve months] . . . or a combination
> of impairments that is severe and meets the duration
> requirement, we will find that you are not disabled.

> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a), 416.920(a). "If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity [("RFC")] based on all the relevant medical and other evidence in your case record, as explained in § 404.1545." 20 C.F.R. §§ 404.1520(e), 416.920(e).

> (iv) At the fourth step, we consider our assessment of your [RFC] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920. In steps one through four, the burden is on the claimant to prove that he or she is disabled and that, as a result of the disability, he or she is unable to engage in any gainful employment. Richardson v. Califano, 574 F.2d 802, 804 (4th Cir. 1978). Once the claimant so proves, the burden of proof shifts to the Commissioner at step five to demonstrate that jobs exist in the national economy that the claimant is capable of performing. Hicks v. Gardner, 393 F.2d 299, 301 (4th Cir. 1968). If the claimant is determined to be disabled or not disabled during any of the five steps, the process will not proceed to the next step. 20 C.F.R. §§ 404.1520, 416.920.

## V.    ADMINISTRATIVE LAW JUDGE'S DECISION

At step one of the sequential evaluation process outlined above, the ALJ concluded that Plaintiff had not engaged in any substantial gainful activity since the March

18, 2015, protective filing date of Plaintiff's SSI claim. R. 12. At step two, the ALJ found

that Plaintiff suffers from the following severe impairments: hypothyroidism, migraine

headaches, lumbosacral strain, fibromyalgia, obesity, major depressive disorder,

generalized anxiety disorder, obsessive compulsive personality disorder, and borderline

intellectual functioning. R. 12–13. At step three, the ALJ found that Plaintiff does not have

an impairment, or combination of impairments, that meets or medically equals the severity

of one of the listed impairments. R. 13–15. At step four, the ALJ determined that Plaintiff

has the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with the

following limitations:

> she should never climb ladders, ropes, or scaffolds. She is
> able to balance, kneel, stop [sic], crouch, and crawl, as well
> as climb ramps and stairs occasionally. She must avoid
> concentrated exposure to extreme cold, extreme heat,
> vibration, loud noise, and hazards such as unprotected
> heights and dangerous machinery. She is limited to
> understanding, remembering, and carrying out simple
> instructions. The claimant is limited [to] simple, routine, and
> repetitive tasks not involving a rapid pace or strict production
> quotas. She is limited to occasional interaction with
> supervisors, co-workers, and the public. She is limited to work
> in a stable work environment where there would be only
> occasional changes to the routine work setting.

R. 16.[1] The ALJ then determined that Plaintiff has no past relevant work. R. 20. At step

five, the ALJ concluded that based on Plaintiff's age, education, work experience, and

RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff

can perform. R. 20–21. More specifically, the ALJ relied on the three occupations listed

by the VE during the ALJ hearing (i.e. security monitor, router, and grader/sorter) and

concluded simply that "[p]ursuant to SSR 00-4p, the undersigned has determined that the

---

[1] For the purposes of his analysis, the ALJ determined that Plaintiff was thirty-four years old on the date
she filed for SSI benefits, and therefore, is a "younger individual" under the regulations. R. 20.

vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." R. 21. Thus, the ALJ found that Plaintiff is not disabled within the meaning of the Social Security Act. R. 21–22.

## VI.    DISCUSSION

### A.    Scope of Review

In reviewing an administrative finding of no disability, the scope of review is limited to determining whether the ALJ applied the proper legal standards and whether the ALJ's factual findings are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). A "factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Likewise, a factual finding by the ALJ is not binding if it is not supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the United States Court of Appeals for the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). When determining whether substantial evidence exists, a court must "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ['s]." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005).

**B.     Contentions of the Parties**

Plaintiff contends that the ALJ committed two errors in her decision. ECF No. 16-1, at 6, 9. Specifically, Plaintiff submits that: (1) "[t]he ALJ's RFC assessment and step five denial of benefits are not supported by substantial evidence since the ALJ failed to explain why he did not adopt the opinions of two State agency medical consultants to which he had assigned 'great weight'" and (2) "[t]he ALJ failed to comply with Social Security Ruling 00-4p when he failed to determine whether the vocational expert's testimony was consistent with the Dictionary of Occupational Titles (DOT)." Id. at 6, 9. On account of these errors, Plaintiff requests that the Court reverse and remand the Commissioner's decision for an award of benefits or for a correction of the errors made below. Id. at 11.

Conversely, the Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed as a matter of law. ECF No. 19, at 1. Addressing Plaintiff's arguments for summary judgment, the Commissioner avers that: (1) the ALJ's RFC assessment captured all of Plaintiff's mental limitations and (2) the VE identified jobs that Plaintiff could perform given her RFC. ECF No. 20, at 8–9. Accordingly, the Commissioner requests that the Court grant her motion for summary judgment and affirm her final decision. Id. at 11.

**C.     Whether the ALJ's Decision Was Conducted in Conformity with the Law and Is Supported by Substantial Evidence**

**1.     The ALJ's RFC Appropriately Accounts for the State Agency Consultants' Medical Opinions, to which the ALJ Assigned Great Weight**

Plaintiff argues that the ALJ's RFC fails to incorporate a key mental limitation contained in the state agency consultants' medical opinions, even though the ALJ assigned great weight to those opinions. ECF No. 16-1, at 7–8. Drs. Roman and Hursey

both opined that Plaintiff "can respond to periodic supportive supervision." R. 72, 89. At the hearing, in response to questioning by Plaintiff's counsel, the VE testified that an individual who "needed to have supportive supervision" would not be employable in any competitive jobs. R. 58. Plaintiff claims that because the ALJ gave the opinions of Drs. Roman and Hursey great weight, the ALJ erred by not including "supportive supervision" in the RFC and not explaining why he did not include "supportive supervision" in the RFC. ECF No. 16-1, at 8.

An ALJ must "weigh and evaluate every medical opinion in the record." Monroe v. Comm'r of Soc. Sec., No. 1:14CV48, 2015 WL 4477712, at *7 (N. D. W. Va. July 22, 2015); see 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). When evaluating medical opinions, the ALJ must "go through the exercise of carefully balancing the evidence, assigning weights to the competing opinions . . . and explaining the rationale for doing so." Smith v. Barnhart, 395 F. Supp. 2d 298, 307 (E.D.N.C. 2005). That careful balancing necessarily requires that the ALJ explain why the "medical evidence in the record supports the opinions or how the opinions are consistent with the medical evidence." Buchanan v. Colvin, No. 1:14cv209, 2016 WL 485339, at *4 (W.D.N.C. Jan. 19, 2016). Furthermore, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

The ALJ specifically noted in his decision that Drs. Roman and Hursey "indicated that [Plaintiff i]s able to respond to periodic supervision" and her "social interaction should be minimal and in a small group setting." R. 20, 72, 88. The RFC specifically limits Plaintiff to "occasional" interaction with supervisors, co-workers, and the public. R. 16. Under the

regulations, "occasional" means "from very little up to one-third of the time." SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996). The meaning of "periodic" is "occurring or recurring at regular intervals" or "occurring repeatedly from time to time." "periodic," Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/periodic (last accessed May 20, 2019). While the ALJ did not use the exact phrasing of the medical opinions in the RFC, there is no conflict between the RFC limiting Plaintiff to occasional interaction with supervisors and the state agency consultants' opinions that she can respond to supportive supervision, occurring at regular intervals or from time to time.

Plaintiff's argument relies on a misreading of the medical opinions. "Can," the word used in the medical opinions, means "being physically or mentally able to," and "able" means "having sufficient power, skill, or resources to do something." See "can," Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/can (last accessed May 20, 2019); "able," Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/able (last accessed May 20, 2019). Plaintiff interprets the medical opinions as saying Plaintiff "needs" supportive supervision. But "need" means "to be needful or necessary" or "to be in want." "need," Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/need (last accessed May 20, 2019). The medical opinions do not state that it is necessary for Plaintiff to have periodic supportive supervision. They only state that Plaintiff has sufficient power, skill, or resources to respond to periodic supportive supervision. The medical opinions are silent on the amount or frequency of supportive supervision Plaintiff may require, and they do not indicate that Plaintiff must have any supervision. At most, the medical opinions indicate that Plaintiff has the ability to respond to recurring interactions with supervisors,

a limitation that is consistent with the RFC which restricts Plaintiff to occasional interaction with supervisors. So, the undersigned concludes that Plaintiff's first allegation of error is without merit.

## 2. The ALJ's Failure to Identify, Resolve, and Explain His Resolution of the Apparent Conflicts between the VE's Testimony and the DOT Necessitate Remand

Plaintiff also alleges that the ALJ failed to comply with SSR 00-4p by failing to address and resolve conflicts between the VE's testimony and the DOT. ECF No. 16-1, at 9 ("[A] review of the DOT descriptions for the jobs named by the [VE] are inconsistent with the ALJ's RFC."). More specifically, Plaintiff notes that the job of router has a Reasoning Level of 3 involving telephone work and frequent interaction with coworkers, supervisors and the public. Id. However, Plaintiff's RFC limits her to simple instructions, simple, routine, and repetitive tasks, and only occasional interactions with coworkers, supervisors, and the public. Id. Plaintiff also notes that the job of grader/sorter describes work on a conveyor belt, although Plaintiff's RFC limits her to no rapid pace or strict production quotas. Id.

An ALJ "may not rely on evidence provided by a VE, . . . if that evidence is based on underlying assumptions or definitions that are inconsistent with [the] regulatory policies or definitions." SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000). The purpose of SSR 00-4p is to require the ALJ (not the VE) to "'[i]dentify *and* obtain a reasonable explanation' for conflicts between the vocational expert's testimony and the [DOT]*, and* to '[e]xplain in the determination or decision how any conflict that has been identified was resolved.'" Pearson v. Colvin, 810 F.3d 204, 208 (4th Cir. 2015) (quoting SSR 00-4p, 2000 WL 1898704, at *1)). These are three distinct duties on the ALJ.

First, "[t]he ALJ must independently **identify** conflicts between the [VE]'s testimony and the [DOT]." Id. at 209 (emphasis added). This means that "SSR 00-4p . . . requires nothing of the claimant." Id. at 210. The ALJ must identify "apparent conflicts" between the VE's testimony and the DOT. See id. at 209. An "apparent conflict" exists where the VE's testimony seems to conflict with the DOT, even if it does not actually conflict with the DOT. See id. However, mere "nitpicking" the ALJ's or VE's word choice on appeal is not an "apparent conflict." Id. An ALJ does not fulfill "his affirmative duty to identify conflicts 'merely because the [VE] responds "yes" when asked if her testimony is consistent with the [DOT].'" Id. at 208–09 (quoting Moore v. Colvin, 769 F.3d 987, 990 (8th Cir. 2014)).

Second, the ALJ is required to **resolve** those identified conflicts between the VE's testimony and the DOT. The ALJ resolves a conflict by "obtain[ing] a reasonable explanation [from the VE] for the . . . conflict." Id. at 208. The ALJ "can request an explanation of the conflict by submitting interrogatories to the vocational expert. . . . If the expert provides a sufficient explanation, the ALJ can resolve the apparent conflict on the basis of the answer to the interrogatories." Id. at 210 n.4. The reality is that "in many cases, testimony may only *appear* to conflict with the [DOT], and the [VE] may be able to explain that, in fact, no conflict exists." Id. at 209. "However, if the ALJ does not elicit this explanation, then the expert's testimony cannot provide substantial evidence to support the ALJ's decision." Id. at 209–10.

Finally, the ALJ must "**explain** in the determination or decision how any conflict that has been identified was resolved." Id. at 208; see also Keller v. Berryhill, 754 F. App'x 193, 196 (4th Cir. 2018) ("Ruling 00-4p further requires that the ALJ explain her resolution of an apparent conflict before relying on the VE's testimony to support the denial of a

benefits claim."); Springer v. Berryhill, No. 1:16-CV-150, 2017 WL 3447920, at *14 (N. D. W. Va. July 25, 2017), adopted by 2017 WL 3446628 (discussing "whether the ALJ met her duty under SSR 00-4p to explain how any conflicts were resolved"). The ALJ needs to do more than just elicit an explanation for the conflict from the VE; the ALJ must also "determine that the explanation is reasonable and provides a basis for relying on the testimony rather than the [DOT]." Pearson, 810 F.3d at 210. Faced with conflicts between the VE's testimony and the DOT, an ALJ's one-sentence, unexplained decision that "accept[s] the vocational expert's testimony as consistent with the [DOT]" is not enough to satisfy the ALJ's duty. See Springer, 2017 WL 3447920, at *14. A reviewing court cannot determine if an ALJ's reasons for resolving a conflict in the way that he did are supported by substantial evidence if the ALJ provides no such reasons. See id.

### i. Security Monitor and Router

According to the DOT, the jobs of security monitor and router given by the VE in this case require a Reasoning Development Level of 3. DICOT 379.367-010, 1991 WL 673244; DICOT 235.662-018, 1991 WL 672174. However, Plaintiff's RFC limits her to "simple instructions" and "simple, routine, and repetitive tasks." R. 16.

Reasoning Development Level 3 requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form[, and d]eal with problems involving several concrete variables in or from standardized situations." DOT, App. C, 1991 WL 688702. Reasoning Development Level 2 requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions[, and d]eal with problems involving a few concrete variables in or from standardized situations." Id. Reasoning Development Level 1 requires the ability to

15

"[a]pply commonsense understanding to carry out simple one- or two-step instructions[, and d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." Id.

In a recent, albeit unpublished, opinion, the Fourth Circuit has held that "an apparent conflict exists between a limitation to short and simple instructions and Reasoning Development Level 3 occupations." Keller, 754 F. App'x at 198. In support of this conclusion, the Fourth Circuit cited favorably to the Ninth and Tenth Circuits which have "determined that an apparent conflict exists when a VE testifies that a claimant limited to simple instructions and tasks can perform Reasoning Development Level 3 jobs." Id. (citing Buck v. Berryhill, 869 F.3d 1040, 1051 (9th Cir. 2017); Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005)). The Fourth Circuit also noted that the administrative record in Keller contained a memorandum from the SSA's "Director for the Division of Field Procedures advis[ing] the Regional Chief ALJs that an apparent conflict exists between a limitation to simple tasks and Reasoning Development Level 3 jobs." Id.

Because Plaintiff's RFC limits her to simple instructions and tasks, there is an apparent conflict between the VE's testimony and the jobs of security monitor and router listed in the DOT, both of which have Reasoning Development Level 3. The record does not indicate that the ALJ identified, resolved, or explained his resolution of this apparent conflict. Accordingly, the ALJ erred.

### ii. Grader/Sorter

According to the DOT, the job of grader/sorter, titled "Nut Sorter," is described in part as: "Observes nut meats on a conveyor belt, and picks out broken, shriveled, or wormy nuts and foreign matter, such as leaves and rocks." DICOT 521.687-086, 1991

WL 674226.[2] Plaintiff's RFC contains a limitation to tasks not involving a rapid pace or strict production quotas. R. 16. At the ALJ hearing, Plaintiff's counsel inquired of the VE whether the grader/sorter job was consistent with Plaintiff's RFC limitations regarding productivity and pace. R. 57. The ALJ interjected in the following exchange with the VE:

> ALJ:    I had intended to, in that first question, and I hope I did that, indicate that such person would be—could not perform work requiring a rapid pace. Would any of the—any of the jobs that you named require rapid or fast pace?

> VE:    No, sir.

> ALJ:    How would you describe the pace involved in the types of jobs you named?

> VE:    It would be just a typical, simple, one, two steps that would require just staying at a steady pace. *It isn't like there's products coming in front of you on a conveyor belt that would require fast pace.*

> ALJ:    Okay.

R. 57–58 (emphasis added). This issue is not addressed further by the ALJ at the hearing, nor is it addressed in the ALJ's decision. In his decision, the ALJ simply states that "the [VE]'s testimony is consistent with the information contained in the [DOT]." R. 21.

The first question is whether there is an apparent conflict between the VE's testimony and the DOT. The undersigned concludes that there is. The DOT description of grader/sorter specifically describes looking at products on a conveyor belt and picking out non-conforming objects from conforming objects. This would appear to conflict with Plaintiff's RFC which contains no rapid pace or strict production quotas. See Coleman v. Berryhill, No. 1:16-3465-TMC, 2018 WL 1417524, at *5 (Mar. 22, 2018) (citing Pearson,

---

[2] The undersigned notes that the job of grader/sorter only has a Reasoning Development Level of 1. So, there is no apparent conflict on account of Plaintiff's limitation to simple instructions and simple, routine, and repetitive tasks. See Section VI.C.2.i.

810 F.3d at 209) ("[T]he DOT definition of the 'nut sorter' job suggests that the worker would be required to remove defective product and foreign matter from a conveyer belt within a time constraint.").

Plaintiff's counsel brought this issue up on the record at the ALJ hearing. R. 57. This prompted the two questions/clarifications from the ALJ noted above. Id. However, in response to the ALJ's questioning, the VE's explanation addressing the issue was in obvious opposition to the DOT definition because the VE denied that there are any products coming on a conveyor belt that would require fast pace. Id. Products coming on a conveyor belt is exactly what the DOT description of "nut sorter" is. So, the undersigned cannot conclude that the ALJ resolved the apparent conflict brought to his attention by Plaintiff's counsel at the hearing.

Finally, even if, in some way, this inquiry by the ALJ could be considered a resolution of the apparent conflict, nowhere in the decision, or in the record, does the ALJ explain his reasons for such a determination. All that the ALJ provided in the decision was boilerplate language that the "[VE]'s testimony is consistent with the information contained within the [DOT]." R. 21. Such minimal reasoning is not a sufficient explanation of the ALJ's resolution of apparent conflicts. See Springer, 2017 WL 3447920, at *14. Reading the ALJ's decision on its own,[3] there is nothing in the decision to indicate that the ALJ identified this apparent conflict, resolved it, or explained his reasons for so resolving it. Accordingly, the ALJ erred.

---

[3] "The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision[.]" Bailey v. Berryhill, No. 1:17-CV-326, 2019 WL 1139498, at *5 n.2 (W.D.N.C. Mar. 12, 2019) (quoting Raney v. Berryhill, No. 3:16-CV-3256-BT, 2018 WL 1305606, at *4 (N.D. Tex. Mar. 12, 2018)).

### iii. The ALJ's Errors Are Not Harmless

"Although a failure to conform to the requirements of SSR 00-4p is harmless error when there is no conflict, an ALJ's blind acceptance of VE testimony that is determined to be inaccurate is reversible error." Id. at *13 (citing English v. Shalala, 10 F.3d 1080 (4th Cir. 1993)). In general, an ALJ's decision should not be affirmed for harmless error where there is an insufficient record to determine whether there is substantial evidence to support the ALJ's decision. Keller, 754 F. App'x at 199. The Fourth Circuit announced in Pearson "that the administrative record is insufficient when it contains an unresolved conflict between a VE's testimony and the DOT." Id. (citing Pearson, 810 F.3d at 210). Furthermore, this Court has determined that lack of an explanation for the ALJ's rationale for resolving conflicts prevents substantial evidence review of the ALJ's determination. See Springer, 2017 WL 3447920, at *14. Finally, the Commissioner's failure to present the issue of harmless error to the reviewing court is ground for finding the issue waived. See Keller, 754 F. App'x at 199.

In this case, the Commissioner did not raise harmless error in her brief to the Court, so the issue is arguably waived. However, even if harmless error is not waived,[4] the undersigned cannot conclude that the ALJ's errors are harmless. The apparent conflict between Plaintiff's RFC and the jobs of security monitor and router was not identified, resolved, or explained by the ALJ. Furthermore, the apparent conflict between Plaintiff's RFC and the job of grader/sorter does not appear to have been resolved. Even if the confused testimony of the VE in response to the ALJ's clarifications can be construed as a resolution of the conflict, the ALJ provided no explanation of this resolution. Lacking

---

[4] The Commissioner raised the issue of harmless error at the oral argument in this matter.

such an explanation, the undersigned cannot evaluate the ALJ's decision to see if substantial evidence exists to support it.

"[C]onsidering the totality of the circumstances, including the unaddressed conflicts and lack of clarity regarding all three of the VE's proposed jobs relied on by the ALJ, this particular instance requires additional vocational input to cure the confusion surrounding the situation." Coleman, 2018 WL 1417524, at *5. In recommending reversal of the Commissioner's decision, the undersigned expresses no opinion on the merits of Plaintiff's claim for disability, and the undersigned expressly recommends providing that an order of "reversal" here does not mandate a finding of disability on remand. The undersigned finds the ALJ's decision deficient for the reasons stated herein, and consequently, that decision as written cannot stand. Accordingly, the undersigned concludes that it is appropriate to remand the action pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

## VII.    RECOMMENDATION

For the reasons herein stated, I find that the Commissioner's decision denying Plaintiff's claim for SSI is not supported by substantial evidence. Accordingly, I **RECOMMEND** that Plaintiff's Motion for Summary Judgment [ECF No. 16] be **GRANTED**, Defendant's Motion for Summary Judgment [ECF No. 19] be **DENIED**, the decision of the Commissioner be **VACATED**, and this case be **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) to identify, resolve, and explain the resolution of the conflicts between the VE's testimony and the DOT, consistent with the directives herein and the relevant policies and regulations.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection**. A copy of such objections should also be submitted to the Honorable John Preston Bailey, United States District Judge. **Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals**. See 28 U.S.C. § 636(b)(1); Wright v. Collins, 766 F.2d 841, 845–48 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Respectfully submitted this 23th day of May, 2019.

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE